**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
427 Riverview Plaza
Trenton, NJ 08611
609-695-6070 (phone)
609-695-6071 (fax)
Andrea Dobin
Ross J. Switkes
*Counsel to Plaintiff,*
*Andrea Dobin, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NMC GLOBAL CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 16-27447 (CMG) |
| ANDREA DOBIN, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>GHULAM SUHRAWARDI and NABIL KASSEM,<br><br>Defendants. | Adv. Pro. No. 18- |

**COMPLAINT FOR AVOIDANCE OF**
**FRAUDULENT TRANSFERS & RELATED RELIEF**

Andrea Dobin, Chapter 7 Trustee (the "Trustee") in the Chapter 7 bankruptcy proceeding of NMC Global Corporation (the "Debtor"), by and through her counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C., and by way of complaint (the "Complaint") against defendants, Ghulam Suhrawardi and Nabil Kassem, respectfully avers as follows:

## PARTIES

1. On September 12, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code 11 U.S.C. § 101 in the United States Bankruptcy Court for the District of New Jersey.

2. On September 13, 2016, the Trustee was appointed to serve as the Chapter 7 Trustee in the Debtor's bankruptcy proceeding. The Trustee qualified and accepted said appointment.

3. Ghulam Suhrawardi ("GS") is an individual who resides at 155 Mercer Road, Colts Neck, New Jersey 07722.

4. GS is the president of the Debtor, executed the bankruptcy petition initiating the Debtor's bankruptcy proceeding, and is an insider under 11 U.S.C. § 101.

5. Nabil Kassem ("NK") is an individual who, upon information and belief, resides at 55 Mullen Drive, Sicklerville, New Jersey 08081.

6. NK was previously a shareholder of the Debtor, and as such, was an insider under 11 U.S.C. § 101 at the time of the NK Payments (as defined below).

## JURISDICTION AND VENUE

7. This is a core proceeding brought pursuant to Fed. R. Bankr. P. 7001, 11 U.S.C. §§ 105, 544, and 548, and 28 U.S.C. § 157(b)(2)(A), (H), and/or (O).

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

9. The venue of this proceeding is in the District Court of New Jersey pursuant to 28 U.S.C. §1409(a).

## BACKGROUND

10. GS and NK were co-owners of a variety of businesses, including, but not limited to the Debtor.

11. Prior to the Partition Date (as defined below), GS owned fifty-one (51%) percent of the Debtor.

12. Prior to the Partition Date (as defined below), NK owned forty-nine (49%) percent of the Debtor.

13. The relationship between GS and NK deteriorated to the point that, in 2013, NK initiated suit against GS in the United States District Court for the District of New Jersey (the "Litigation").

14. The parties resolved the Litigation consensually and the terms were incorporated into a Binding Memorandum of Understanding dated as of December 21, 2013 (the "MOU").

15. Under the terms of the MOU, GS and NK, *inter alia*, divided their jointly owned business assets and provided for credits and debits associated with the potential unequal division of such assets.

16. As part of the MOU and as a result thereof, the Debtor's operations were divided between the "Northeast Region," to be controlled by NK, and the "Gulf Region," to be controlled by GS.

17. The MOU provides that the Northeast Region includes Thorofare, New Jersey, Roselle, New Jersey, New Haven, Connecticut, and Chesapeake, Virginia.

18. The MOU provides that the Gulf Region includes New Orleans, Louisiana and Pasadena (Houston), Texas.

19. Under the terms of the MOU (i) the Gulf Region operations would be owned and operated by GS in the Debtor's name; and (ii) Northeast Region operations would be owned and operated by NK using the name NMK Resources, Inc., a corporation that he formed and owned.

20. The parties designated January 31, 2014 as the "Partition Date" for the implementation of the MOU (the "Partition Date").

21. Pursuant to the MOU, the Debtor's receivables up to the Partition Date were to be collected and distributed to GS and NK on a monthly basis. The MOU provides that available distributions were to be paid fifty-one percent (51%) to GS and forty-nine percent (49%) to NK.

22. Following disputes arising from the MOU, the Defendants submitted to arbitration. The arbitration resulted in the entry of a Final Award (the "Final Award") dated November 30, 2015, that resolved certain disputes between GS and NK concerning the division of the Debtor's assets.

23. At the time of the Partition Date, and thereafter, the Debtor incurred hundreds of thousands of dollars of debt to fund operations by entering into loans, equipment leases, and/or other financing agreements with banks and financial institutions, including, but not limited to, HSBC Bank, USA, N.A., Leaf Capital Funding, and NMHG Financial Services.

24. On September 12, 2016, the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

25. On its Summary of Assets and Liabilities, the Debtor disclosed that it had total liabilities of $2,659,008.30 as of the Petition Date.

26. At a deposition on January 24, 2018, GS testified that the Debtor drew one hundred (100%) percent of a line of credit within the first few months after the Partition Date because the Debtor was running out of money.

# COUNT ONE
## (DOBIN V. GS)
### (Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548)

27. The Trustee repeats and realleges the allegations set forth in Paragraphs 1 through 26 as set forth at length herein.

28. The Debtor made payments to GS totaling approximately $791,156.39 (the "GS Payments") within the two (2) years before the Petition Date.

29. The Debtor received less than reasonably equivalent value in exchange for the GS Payments.

30. The Debtor was insolvent at the time of the GS Payments.

31. The GS Payments left the Debtor with unreasonably small capital.

**WHEREFORE**, the Trustee demands judgment against GS as follows:

a. Avoiding the GS Payments as a fraudulent transfer pursuant to 11 U.S.C. § 548, or other remedy provided for pursuant to 11 U.S.C. § 550;

b. Entering judgment in the amount of $791,156.39 against GS in favor of the Trustee;

c. Awarding pre-judgment interest;

d. Awarding attorneys' fees and costs; and

e. Granting such other and further relief as is just and appropriate.

# COUNT TWO
## (DOBIN V. GS)
### (Damages Pursuant to N.J.S.A. 14A:7-14.1)

32. The Trustee repeats and realleges the allegations set forth in Paragraphs 1 through 26 as set forth at length herein.

33. The Debtor made the GS Payments to GS on account of his fifty-one percent (51%) ownership interest of the Debtor.

34. As a result of the GS Payments, the Debtor was unable to pay its debts as they became due in the usual course of its business.

35. As a result of the GS Payments, the Debtor's total assets were less than its total liabilities.

36. The GS Payments were prohibited by N.J.S.A. 14A:7-14.1.

**WHEREFORE**, the Trustee demands judgment against GS as follows:

a. Entering judgment in favor of the Trustee and against GS in the amount of $791,156.39;

b. Awarding pre-judgment interest;

c. Awarding attorneys' fees and costs; and

d. Granting such other and further relief as is just and appropriate.

### COUNT THREE
### (DOBIN V. NK)
### (Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548)

37. The Trustee repeats and realleges the allegations set forth in Paragraphs 1 through 26 as set forth at length herein.

38. The Debtor made payments to NK totaling approximately $895,536.27 (the "NK Payments") within the two (2) years before the Petition Date.

39. The Debtor received less than reasonably equivalent value in exchange for the NK Payments.

40. The Debtor was insolvent at time of the NK Payments.

41. The NK Payments left the Debtor with unreasonably small capital.

6

**WHEREFORE**, the Trustee demands judgment against NK as follows:

a. Avoiding the NK Payments as a fraudulent transfer pursuant to 11 U.S.C. § 548, or other remedy provided for pursuant to 11 U.S.C. § 550;

b. Entering judgment in favor of the Trustee and against NK in the amount of $895,536.27;

c. Awarding pre-judgment interest;

d. Awarding attorneys' fees and costs; and

e. Granting such other and further relief as is just and appropriate.

### COUNT FOUR
### (DOBIN V. NK)
### (Damages Pursuant to N.J.S.A. 14A:7-14.1)

42. The Trustee repeats and realleges the allegations set forth in Paragraphs 1 through 26 as set forth at length herein.

43. The Debtor made the NK Payments to NK on account of his forty-nine percent (49%) ownership interest of the Debtor.

44. As a result of the NK Payments, the Debtor was unable to pay its debts as they became due in the usual course of business.

45. As a result of the GS Payments, the Debtor's total assets were less than its total liabilities.

46. The NK Payments were prohibited by N.J.S.A. 14A:7-14.1.

**WHEREFORE**, the Trustee demands judgment against NK as follows:

a. Entering judgment in favor of the Trustee and against NK in the amount of $895,536.27;

b. Awarding pre-judgment interest;

c. Awarding attorneys' fees and costs; and

d. Granting such other and further relief as is just and appropriate.

**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
*Counsel to Plaintiff,*
*Andrea Dobin, Chapter 7 Trustee*

By: _____*/s/ Andrea Dobin*_____
      ANDREA DOBIN

Dated: September 7, 2018

4836-1344-0881, v. 1