# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NMC GLOBAL CORPORATION,<br><br>      Debtor. | Case No. 16-27447 (CMG)<br><br>Chapter 7<br><br>Honorable Christine M. Gravelle, U.S.B.J. |
| ANDREA DOBIN, CHAPTER 7 TRUSTEE,<br><br>      Plaintiff,<br><br>v.<br><br>GHULAM SUHRAWARDI and NABIL KASSEM,<br><br>      Defendant. | Adv. Pro. No. 18-01469 (CMG) |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANT NABIL KASSEM**

            MCMANIMON, SCOTLAND & BAUMANN, LLC
            427 Riverview Plaza
            Trenton, NJ 08611
            (609) 695-6070
            *Attorneys for Andrea Dobin, Chapter 7 Trustee*

<u>Of Counsel and on the Brief:</u>
Andrea Dobin
Ross J. Switkes

**PRELIMINARY STATEMENT**

Andrea Dobin, Chapter 7 Trustee (the "Trustee") for NMC Global Corporation (the "Debtor"), hereby submits this opposition to the motion to dismiss (the "Motion") filed by Defendant Nabil Kassem ("NK"). The Trustee respectfully submits that the Motion utterly fails as a matter of law, was solely filed as a delay tactic, and must be summarily denied.

**FACTUAL BACKGROUND**

In connection with a motion to dismiss, the Court must accept all allegations in the complaint as true. Because NK failed to acknowledge the detailed factual allegations in the Complaint, however, the Trustee provides a brief recitation of the factual predicate for the complaint.

NK and co-defendant, Ghulam Suhrawardi ("GS" and together with NK, the "Defendants"), were co-owners of a variety of businesses, including the Debtor. GS owned fifty-one percent (51%) of the Debtor and NK owned forty-nine percent (49%) of the Debtor.

The Defendants' relationship deteriorated and led to litigation commenced by NK against GS in the U.S. District Court for the District of New Jersey (the "Litigation"). The Defendants resolved the Litigation consensually through terms incorporated in a Binding Memorandum of Understanding dated December 21, 2013 (the "MOU"). The parties designated January 31, 2014 at the Partition Date for the implementation of the MOU (the "Partition Date").

Under the MOU, the Defendants, *inter alia*, divided their jointly owned business assets and provided for credits and debits associated with the potential unequal division of such assets. The MOU provided that the Debtor's operations in the "Gulf Region" would be owned and operated by GS *as the successor to the Debtor*, while the operations in the "Northeast Region"

would be spun off and owned and operated by NK under the name of NMK Resources, Inc. - a corporation formed and owned solely by NK.

Pursuant to the MOU, the Debtor's accounts receivable up to the Partition Date were to be collected and distributed to the Defendants on a monthly basis based upon their ownership interest. Following disputes arising from the MOU, however, the Defendants submitted to arbitration, following which, the arbitrator entered a Final Award dated November 30, 2015 that resolved certain remaining disputes between the Defendants concerning the division of the Debtor's assets.

As set forth in detail in the Complaint, at the time of the Partition Date, and thereafter, the Debtor, now owned solely by GS and consisting solely of the Gulf Region, incurred hundreds of thousands of dollars of debt to fund operations by entering into loans, equipment leases, and/or other financing agreements with various lenders, including, but not limited to, HSBC Bank, USA, N.A., Leaf Capital Funding, and NMHG Financial Services. As a result of this significant indebtedness, on September 12, 2016 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On its Summary of Assets and Liabilities, the Debtor disclosed that it had total liabilities of $2,659,008.30 as of the Petition Date. Consistent therewith, at a deposition on January 24, 2018, GS testified that the Debtor drew one hundred (100%) percent of a line of credit within the first few months after the Partition Date because the Debtor was running out of money.

On September 7, 2018, the Trustee filed the Complaint against the Defendants. As it relates to NK, the Complaint sets forth two (2) Counts. Count III seeks the recovery of $895,536.27 received by NK from the Debtor as constructively fraudulent transfers. Count IV seeks the recovery of amounts received by NK from the Debtor under N.J.S.A. 14A:7-14.1 under

3

a similar theory. On October 2, 2018, GS filed an answer. On October 23, 2018, NK filed the Motion.

## **LEGAL ARGUMENT**

As set forth below, the Trustee respectfully submits that the Motion must be denied. In sum, the Complaint adequately satisfies the pleading requirements of Fed. R. Civ. P. 12(b)(6) and the Complaint should not be dismissed under *Stern v. Marshall*. The Trustee responds to NK's arguments in the order in which they are presented in the Motion.

**Motion to Dismiss Standard**

The Motion does not identify which subsection of Fed. R. Civ. P. 12(b) it is predicated on. Based upon the case law cited, however, the Trustee presumes that NK is seeking relief under Fed. R. Civ. P. 12(b)(6).

A motion to dismiss for failure to state a claim is governed by Fed. R. Civ. P. 12(b)(6), made applicable here by Bankruptcy Rule 7012(b). When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations in the complaint, as well as all reasonable inferences that can be drawn from them. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). The court must further construe the facts in a light more favorable to the non-movant. *Id.* citing *Sheridan v. NGK Metals Corp.*, 609 F.3d 289, 262, n.27 (3d Cir. 2010). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* citing *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Id.* The Trustee respectfully submits that the Complaint satisfies the pleading requirements required by Fed. R. Civ. P. 12(b)(6) and the Motion must be denied.

**<u>Count III Alleging Constructively Fraudulent Transfers Cannot be Dismissed</u>**

Count III of the Complaint seeks the recovery of constructively fraudulent transfers. NK argues that the Complaint should be dismissed due to a failure of the Trustee to, *inter alia*, identify "badges of fraud," meet the heightened pleading requirements of Fed. R. Civ. P. 9, and/or plead the facts necessary to impute an insider. Based upon these allegations, the Trustee concludes that either NK did not read the Complaint, has made a mistake concerning the governing law, or chose to ignore both.

First, a review of Count III makes clear that the Trustee is pursuing relief solely under a constructive fraud theory. 11 U.S.C. § 548 provides in relevant part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or . . .

11 U.S.C. § 548.  The "badges of fraud" are not relevant to an allegation of a constructive fraudulent transfer; they are only relevant when an "actual intent" fraudulent transfer is alleged.

The Trustee is not and has not alleged an actual intent fraudulent transfer.  Nowhere in the Complaint do the words "actual intent" appear as found in subsection (A) of Section 548.  To the contrary, consistent with subsection (B) of Section 548, the Trustee simply alleges that the Debtor received less than reasonably equivalent value in exchange for the transfers NK received from the Debtor, such transfers were at a time when the Debtor was insolvent, and the transfers left the Debtor with unreasonably small capital.  Thus, it is clear that the Trustee is not alleging an actual intent fraudulent transfer.

Second, and because the Trustee does not allege an actual intent fraudulent transfer, the Trustee is not required to plead "badges of fraud."  As acknowledged by NK in the Motion, courts use various "badges of fraud" to infer fraudulent intent.  *See In re Hill*, 352 B.R. 183, 198-199 (Bankr. D.N.J. 2006).  Thus, contrary to NK's assertion in the Motion, a lack of articulation of "badges of fraud" is not only not required, but not a basis for dismissal of the Complaint.

Similarly, most courts hold that Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud, but instead, rely on a debtor's financial condition and the sufficiency of consideration provided by the transferee.  *See In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *16 (Bankr. D.N.J. November 8, 2013) quoting 5 *Collier on Bankruptcy* ¶ 548.11 [1][a][ii] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.); *In re B. Moss Clothing Co., Ltd.*, 2011 WL 3878387, at *5 (Bankr. D.N.J. August 31, 2011) (holding that a number of courts have conclude that a cause of action based on constructive fraud does not have to meet the heightened pleading standards of Rule 9) citing *In re White Metal Rolling & Stamping Corp.,* 222 B.R. 417, 428–29

(Bankr.S.D.N.Y.1998) (explaining that Rule 9(b) does not apply to claims of constructive fraudulent conveyance, because such claims are based on the financial condition of the debtor and the effect on the creditors, not on fraud); *China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.,* 788 F. Supp. 815, 818 (D. Del. 1992) ("Despite the similarity in the terms 'fraud' and 'fraudulent conveyance', the pleading requirements for fraud are not necessarily applicable to pleadings alleging a fraudulent conveyance."); *In re Air Cargo, Inc.,* 401 B.R. 178, 192 (Bankr. D. Md. 2008); *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.),* 343 B.R. 444, 460 (Bankr.S.D.N.Y.2006); *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.),* 327 B.R. 711, 717–18 (Bankr. D. Del. 2005); *contra Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1079 (7th Cir.1997); *In re Oakwood Homes, Corp.,* 325 B.R. 696, 698 (Bankr. D. Del. 2005). As a result, because the Complaint alleges constructively fraudulent transfers, Rule 9 does not apply, and NK's argument is without merit.

Finally, and while not required to support a cause of action for a constructively fraudulent transfer, the Trustee plead sufficient information to establish that NK was an insider of the Debtor. 11 U.S.C. § 101(31)(B) provides that if a debtor is a corporation, an inside is an individual that is a director, officer, general partner, or someone in control of the Debtor. The Complaint alleges that NK was one of two (2) owners of the Debtor having owned forty-nine percent (49%) of the Debtor and he received significant distributions as a result of his ownership interest. Thus, the Trustee respectfully submits that NK is an insider and the factual predicate for this legal conclusion is pled in the Complaint.

**Count IV Seeking Damages Must Survive the Motion**

Count IV seeks damages pursuant to N.J.S.A. 14A:7-14.1 as the Debtor made payments to NK on account of his forty-nine percent (49%) ownership in the Debtor at a time that it was unable to pay its debts as they became due and/or in the usual course of business. NK alleges that Count IV must be dismissed because the Complaint "does not contain any facts necessary to meet the standard of review." Motion at 6. Notably, paragraph 42 of the Complaint repeats and realleges the allegations set forth in Paragraphs 1 through 26 of the Complaint as set forth fully therein. Further, the cause of action contains many of the elements of the constructively fraudulent transfer claim in Count III. Again, the Trustee respectfully submits that NK's argument is without merit and disregards the well-pled facts in the Complaint.

> N.J.S.A. 14A:7-14.1 provides in relevant part:
>
> (1) "Distribution" means a direct or indirect transfer of money or other property (except its own shares) or incurrence of indebtedness by a corporation to or for the benefit of its shareholders in respect of any of its shares. A distribution may be in the form of a dividend, a purchase, redemption or other acquisition of its shares, or otherwise.
>
> (2) A corporation may not make a distribution if, after giving effect thereto, either:
>
> (a) The corporation would be unable to pay its debts as they become due in the usual course of its business; or
>
> (b) The corporation's total assets would be less than its total liabilities.

N.J.S.A. 14A:7-14.1. In sum, the statutory provision alleges that a corporation cannot render itself insolvent by making distributions to its owners. This is *exactly* what occurred in this case and is alleged in the Complaint. The Complaint contains the following factual allegations which provide a foundation for a successful claim under N.J.S.A. 14A:7-14.1:

1. NK was previously a shareholder of the Debtor having owned a forty-nine percent (49%) interest of the Debtor. Complaint at ¶¶ 6, 12, 21, 43.

2. NK received distributions from the Debtor on account of his ownership totaling $895,536.27. *Id.* at ¶¶ 21, 38, 43.

3. At the time of the Partition Date, and thereafter, the Debtor incurred hundreds of thousands of dollars of debt to fund operations by entering into loans, equipment leases, and/or other financing agreements with banks and financial institutions, including, but not limited to, HSBC Bank, USA, N.A., Leaf Capital Funding, and NMHG Financial Services. *Id.* at ¶ 23.

4. On September 12, 2016, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *Id.* at ¶ 24.

5. On its Summary of Assets and Liabilities, the Debtor disclosed that it had total liabilities of $2,659,008.30 as of the Petition Date. *Id.* at ¶ 25.

6. At a deposition on January 24, 2018, GS testified that the Debtor drew one hundred (100%) percent of a line of credit within the first few months after the Partition Date because the Debtor was running out of money. *Id.* at ¶ 26.

7. As a result of the distributions, the Debtor would be unable to pay its debts as they became due in the usual course of business or the Debtor's total assets would be less than its liabilities. *Id.* at ¶¶ 23, 24, 25, 26.

The Trustee submits that she has plead more than sufficient factual matter to survive dismissal of this claim as it states a claim that is plausible on its face as required by Fed. R. Civ. P. 12(b)(6). Thus, the Motion must be denied.

**<u>The Court Has Jurisdiction Over this Litigation</u>**

NK relies on *Stern v. Marshall,* 564 U.S. 462 (2011) to argue that the Complaint should be dismissed because this Court lacks jurisdiction to enter final judgment in this case. The Trustee disagrees.

*Stern* does not preclude the Bankruptcy Court from entering final judgment on core matters. Count III asserts a fraudulent transfer claim under 11 U.S.C. § 548. This claim is core, and as such, this Court can issue final judgment thereupon. *See DBSI, Inc.*, 467 B.R. 767, 772-773 (Bankr. D. Del. 2012) citing *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 647 (Bankr. D. Del. 2012) ("[P]reference and fraudulent transfer claims

arise both under Title 11 and in a case under Title 11 and are by definition 'core' issues under § 157(b)(2)(F) & (H) for which a bankruptcy court has authority to enter final adjudications."); *Kirschner v. Agoglia (In re Refco),* 461 B.R. 181, 192 (Bankr. S.D.N.Y. 2011) ("Given the repeated and emphatic limiting language in *Stern,* ... and the role of fraudulent transfer claims under the Bankruptcy Code, including their management and resolution ultimately by the bankruptcy courts in the context of Congress' bankruptcy scheme, Article III of the Constitution does not prohibit the bankruptcy courts' determination of fraudulent transfer claims under 11 U.S.C. §§ 544 and 548 by final judgment."); *Fox v. Picard (In re Madoff),* 2012 WL 990829, at *12 n. 5 (Bankr. S.D.N.Y March 26, 2012) ("[Appellant] points to no language in *Stern* that can reasonably be interpreted as holding that the power explicitly accorded by Congress to the bankruptcy courts to enter judgment in fraudulent transfer actions ... violates Article III of the United States Constitution. The specific issue in *Stern* was the constitutional authority for a bankruptcy court to enter judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.... The adjudication of fraudulent transfer and avoidance actions is a basic feature of that division of labor.") (citations omitted).

With regard to Count IV, which seeks the recovery of damages pursuant to New Jersey State law, the Trustee submits that such claim is so closely tethered to the fraudulent transfer claims, that it is also core under 28 U.S.C. § 157(b)(2)(H). Further, it can be construed that such claims independently fall under the purview of 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the Estate), (E) (orders to turnover property of the estate), and/or (O) (other proceedings affecting the liquidation of the assets of the estate).

Notwithstanding, to the extent this Court deems such claim "non-core," in compliance with *Stern*, this Court has authority to issue proposed findings of fact and conclusions of law,

which the District Court then reviews *de novo* and enter judgment. *See Exec. Benefits Ins. Agency v. Arkinson*, 134 S.Ct. 2165, 2170 (2014). In other words, this Court can rule even on *Stern* claims, so long as those rulings are subject to review by the District Court. *Martinelli v. Colts Neck Golf Club and Country Club*, 2015 WL 503261, n. 16 (D.N.J. August 25, 2015). As such, the Bankruptcy Court has the power to entertain all pre-trial proceedings, including summary judgment motions. *See Boyd v. King Par, LLC*, 2011 WL 5509873, at *2 (W.D. Mich. November 11, 2011). This sound policy is focused on efficient use of judicial resources and what will promote uniformity of bankruptcy administration. *See id.* This Court is unquestionably familiar with the Debtor's estate, and has become familiar with the parties to this adversary proceeding, the issue of fraudulent conveyances is a core matter, and allowing this Court to oversee discovery and other pre-trial matters will promote uniformity of bankruptcy administration. *Id.* Thus, the Trustee implores this Court to deny the Motion and permit this litigation to proceed in this Court in accordance with *Stern* and its progeny.

## CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that the Court deny the Motion with prejudice.

Respectfully submitted,

MCMANIMON, SCOTLAND & BAUMANN, LLC
*Attorneys for Andrea Dobin, Chapter 7 Trustee*

By: */s/ Andrea Dobin*
      ANDREA DOBIN

Dated: November 20, 2018
4823-2103-5641, v. 1